**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **PHOENIX WORLDWIDE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Case No._____** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **SWIFT PAWS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Phoenix Worldwide, LLC ("Phoenix Worldwide" or "Plaintiff"), by and through its undersigned attorneys, brings this civil action against Defendant, Swift Paws, Inc. ("Swift Paws" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for declaratory judgment of patent invalidity and non-infringement and is based on the patent laws of the United States, 35 U.S.C. § 1, *et seq*. and the United States Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.     Plaintiff seeks a declaration that Defendant's United States Patents, Nos. 10,609,904 ("the '904 Patent") and 11,297,801 ("the '801 Patent"), are invalid, unenforceable, and, not infringed by the manufacture, use, sale, offer for sale, or importation of Plaintiff's Fast Fetch dog toy (the "Fast Fetch Toy") into the United States.

1

3.    Plaintiff is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business located at 407C Main Street Suite 203, Franklin, TN 37064.

4.    Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 2412 Irwin Street, Melbourne, FL 32901 wherein it is registered as a foreign corporation in Florida, and may be served on either of its registered agents, Registered Agent Solutions, Inc., at 838 Walker Road Suite 21-2, Dover, DE 19904 or Meghan Wolfgram, at 2955 Lett Ln, Malabar, FL 32950.

5.    Defendant is the owner of the '904 and '801 Patents.

## JURISDICTION AND VENUE

6.    This action arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* and under the Declaratory Judgment act 28 U.S.C. §§ 2201 and 2202.

7.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent infringement).

8.    Additionally, this Court has diversity over the parties pursuant to 28 U.S.C. § 1332.

9.    Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

10.    This Court has personal jurisdiction over the Defendant, because, among other things, Defendant directed its patent assertion campaign at Plaintiff (a Tennessee resident) in this judicial district by *inter alia*, seeking to enjoin Plaintiff's business by reporting Plaintiff as an alleged infringer of the '801 Patent to a third-party, Amazon.com ("Amazon"), which was the only marketplace or retailer selling Plaintiff's Fast Fetch Toy and is the largest online retailer in the United States. Defendant's campaign has significantly impacted Plaintiff, because Defendant's

campaign caused Amazon to remove Plaintiff's Fast Fetch Toy from its marketplace, leading to a significant loss of sales. Further, Defendant's action in reporting Plaintiff to Amazon has negatively impacted Plaintiff's account status at Amazon. And, upon information and belief, Defendant advertises and sells products that are based on the '904 and '801 Patents in this judicial district, including advertising on Facebook.

11.    By initiating the Amazon Complaint, as described in this Complaint, Defendant availed itself of the laws of the state of Tennessee and knew that its actions would harm Plaintiff in this district.

12.    The Amazon Complaint constitutes unfair competition directed at Plaintiff in Tennessee and prejudices Plaintiff's ability to conduct business in Tennessee.

13.    Venue in this judicial district is proper, because Defendant is subject to personal jurisdiction in this district and because, *inter alia*, a substantial part of the events giving rise to this Complaint occurred in this district. The legal rights that were violated as complained of herein exist in the Middle District of Tennessee, and a substantial part of the improper restraint of trade with anticompetitive effects on the market occurred in the Middle District of Tennessee, where Plaintiff's sole two principals reside. In addition, Plaintiff designed the Fast Fetch Toy in the Middle District of Tennessee and China and sold the product to at least one customer in the Middle District of Tennessee through the Amazon marketplace prior to the Amazon Complaint.

## GENERAL ALLEGATIONS

14.    On May 3, 2024, to prevent Amazon from offering the Fast Fetch Toy, Defendant contacted Amazon and requested that Amazon de-list the Fast Fetch Toy because, according to Defendant, the Fast Fetch Toy infringed the '801 Patent (the "Amazon Complaint"). A true and correct copy of the Amazon Complaint is attached as **Exhibit 1**.

15.     When Defendant submitted the Amazon Complaint, the Amazon product listing page for the Fast Fetch Toy identified Plaintiff as the seller of the Fast Fetch Toy, and included a hyperlink to an Amazon page identifying Plaintiff's business address as 407C Main St, Franklin, TN 37064.  A true and correct copy of the Amazon page identifying Plaintiff's business address as 407C Main St, Franklin TN 37064 is attached as **Exhibit 2.**

16.     Upon receipt of the Amazon Complaint, Amazon promptly delisted the Fast Fetch Toy by completely removing it from its marketplace, thus precluding all sales.  Amazon also informed Plaintiff that Plaintiff had an opportunity to have the product potentially added back on the Amazon marketplace by submitting a response in the form of a court order stating Plaintiff was permitted to sell the products, a letter of non-infringement from legal counsel, or a retraction of the Amazon Complaint by Defendant.  *See* Exhibit 1.

17.     Plaintiff promptly submitted a response, which included a letter of non-infringement from legal counsel.  Amazon, however, refused to re-list the product.

18.     On May 21, 2024, Amazon sent Plaintiff a boiler plate response noting again that Defendant would either need to retract the Amazon Complaint or Plaintiff could obtain a court order, temporary restraining order, injunction or affidavit, or letter of non-infringement from legal counsel (the "May 21, 2024 Notice").  A true and correct copy of the May 21, 2024 Notice is attached as **Exhibit 3**.

19.     In the May 21, 2024 Notice, Amazon also informed Plaintiff that Defendant's Amazon Complaint had negatively affected Plaintiff's account health, or standing, on Amazon.  *See* Exhibit 2 ("The violation record will remain on your Account Health page for up to 180 days after the listing was deactivated or until the violation is addressed . . . . Leaving this and other listing violations unaddressed may result in account deactivation").

4

20.     The Amazon Complaint has harmed Plaintiff in its ability to sell both the Fast Fetch Toy as well as other products on Amazon.

### Phoenix Worldwide and the Product at Issue

21.     Plaintiff is owned and operated by long-time Brentwood and Franklin, Tennessee-based toy executives, Thomas Hoffman Brown and Michael "Mickey" Tant, Jr., and Plaintiff designs several toys and other consumer products that it sells exclusively through Amazon.

22.     In 2023, Plaintiff learned of Defendant's Swift Paws dog toy and believed that it had potential but was too expensive for the average consumer, retailing for $499.99.

23.      Plaintiff purchased Defendant's Swift Paws dog toy and did not see any patent markings on the product itself or on any advertising material promoting the product, including Defendant's website.

24.     Plaintiff then set about branding, designing, and manufacturing its own product under the name Fast Fetch.

25.     An illustration of the Fast Fetch Toy is below.



26.     The Fast Fetch Toy is a pulley-based system in which a user sets the four pulley bases on the ground in a pattern (e.g., square), ties a string around the pulley, attaches the flag to the string, and uses the pulley bases to move the string about the pattern so that the user's pet can chase the flag.

27.     On April 21, 2024, Plaintiff offered the Fast Fetch Toy for sale on Amazon, and promoted its listing by purchasing advertising on Amazon.

28.     Plaintiff offered the product for sale at a price lower than Defendant's Swift Paws product.

29.     The Fast Fetch Toy sold for approximately two weeks on Amazon until Amazon removed the product due to the Amazon Complaint.

30.     After receiving the Amazon Complaint, Plaintiff conferred with its legal counsel and concluded that the '801 and '904 Patents were not valid, not infringed, and unenforceable.

31.     Because Amazon refused to re-list the Fast Fetch Toy after receiving Plaintiff's response, Plaintiff brings this action for a court order of non-infringement, invalidity, and unenforceability of the '801 and '904 Patents, and other relief.

## FIRST CLAIM FOR RELIEF
## NON-INFRINGEMENT OF THE '904 PATENT

32.     Plaintiff restates the foregoing paragraphs as if fully set forth herein.

33.     On April 7, 2020, the '904 Patent, titled "Lure Chasing System," was issued to Meghan Wolfgram and John Ritter.

34.     The '904 Patent is assigned to Defendant.

35.     The '904 Patent matured from U.S. Patent Application No. 14.569,715 ("the '715 Application"), filed December 14, 2014, which claims priority to U.S. Provisional Application No. 61/917,058, filed December 17, 2013 ("the '058 Application").

36. A true and correct copy of the '904 Patent is attached to this Complaint as **Exhibit 4** and is incorporated herein by reference.

37. An actual controversy exists between Plaintiff and Defendant as to whether Plaintiff's Fast Fetch Toy has infringed, or is infringing, the '904 Patent.

38. The Fast Fetch Toy does not infringe the '904 Patent, literally or under the doctrine of equivalents, for at least the following reasons: each and every claim of the '904 Patent requires 1) a drive window that is distinct from an opening; 2) a drive housing base arcuate surface that forms an opening; 3) that the drive pulley be at least partially enclosed by a drive housing cover annular recess; and 4) that the drive pulley extend into the drive housing cover annular recess. None of these features are present in Fast Fetch Toy.

39. In addition, claims 11-18 require a hook and pile fastener, which is also missing from the Fast Fetch Toy.

40. Plaintiff expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

41. Plaintiff seeks a declaratory judgment that making, using, offering to sell, selling, and importing Plaintiff's products, including the Fast Fetch Toy, does not and will not infringe any valid claim of the '904 Patent.

**SECOND CLAIM FOR RELIEF**
**INVALIDITY OF THE '904 PATENT**

42. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

43. An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '904 Patent.

44. The effective filing date of the claims of the '904 Patent is December 14, 2014 (the filing date of the '715 Application"), or alternatively, December 17, 2013 (the filing date of the '058 Application).

45. Claims 1-20 of the '904 Patent are invalid for anticipation under 35 U.S.C. § 102 because Plaintiff has sold, disclosed, or otherwise made available to the public lure chasing systems claimed in the '904 Patent more than one (1) year before the effective filing date of the claims of the '904 Patent.

46. By way of example, Defendant and inventor Meghan Wolfgram submitted a sworn declaration to the Trademark Office on October 25, 2017, attesting that Defendant has sold dog toys under the name Swift Paws since at least December 8, 2011.

47. A true and correct copy of the October 25, 2017 Trademark submission is attached as **Exhibit 5**.

48. In addition, the Florida Today article entitled "'Shark Tank' to feature SwiftPaws, a Melbourne dog lure course startup at Groundswell" available at https://www.floridatoday.com/story/news/2022/03/30/shark-tank-abc-swiftpaws-melbourne-dog-lure-course-startup-groundswell-startups-april-8-episode/7127103001/, notes that Defendant began showing prototypes of the product in 2011.

49. A true and correct copy of the Florida Today article is attached as **Exhibit 6.**

50. In addition, Defendant operates a YouTube channel entitled SwiftPaws, available at https://www.youtube.com/@SwiftPaws/videos, which contains at least thirteen (13) videos posted in 2011, 2012, and 2013 that both describe the systems claimed in the '904 Patent and show them in public use before the filing date of the '904 Patent. *See* **Exhibit 7**. The videos include:

A) A YouTube Video entitled "Pretzel's SwiftPaws Run", dated November 14, 2011 with a description stating: "Welcome to SwiftPaws: active

entertainment for you and your pet! We are a company dedicate to the fast fun that is known to enthusiasts as lure coursing. Right now, we are manufacturing and selling personal outdoor setups. More information can be found at www.swiftpaws.com";

B)   A YouTube video entitled "SwiftPaws Lure Coursing Fun", dated November 14, 2011;

C)   A YouTube video entitled "SwiftPaws in Action", dated March 5, 2012;

D)   A YouTube video entitled "Swift Paws Lure Coursing – Dogs of All Sizes", dated April 16, 2012;

E)   A YouTube video entitled "Lure Course Brevard on WFIt", dated April 18, 2012;

F)   A YouTube video entitled "Swift Paws in NY with ISRCH", dated August 1, 2012;

G)   A YouTube video entitled "Beau Lure Courses With Style", dated September 18, 2012;

H)   A YouTube video entitled "Woofstock Brevard 2012", dated September 30, 2012;

I)   A YouTube video entitled "Swift Paws Media Coverage", dated November 20, 2012;

J)   A YouTube video entitled "Cheetah Lure Chasing at Bordeaux Pessac Zoo with Swift Paws", dated February 21, 2013;

K)   A YouTube video entitled "Jr. Lure Operators", dated April 9, 2013;

L)   A YouTube video entitled "Lure Chasing in Beautiful Bluffton, SC", dated April 10, 2013; and

M)   A YouTube video entitled "Charleston Lure Chase at Pet Fest", dated April 20, 2013.

51.   And Defendant's Facebook page (https://www.facebook.com/SwiftPaws) also includes several posts between 2012 and 2013 showing the lure chasing system. *See* **Exhibit 8**.

52.   Additional websites also document use of the invention in 2012. *See* **Exhibits 9-12**.

53.    For example, the Lure Course Brevard Facebook page includes photographs of Meghan Wolfgram, owner of Defendant and inventor of the '904 Patent operating the lure chasing system in posts dated December 11, 2012 and September 30, 2012, as shown below and in **Exhibits 13-14.**





54.    Further, the Wayback machine internet archive shows that Defendant was offering the lure chasing systems claimed in the '904 Patent via its website www.swiftpaws.com  at least

as early as October 19, 2012. *See* **Exhibit 15**, https://web.archive.org/web/20120419184856/http://swiftpaws.com:80/order-now.

55.     Further, claims 1-20 of the '904 Patent are invalid for obviousness under 35 U.S.C. § 103, in view of the prior art disclosures described in herein, alone or in combination.

56.     In addition, claims 1-20 of the '904 Patent are invalid for failure to meet the written description, enablement and definiteness requirements of 35 U.S.C. § 112.

57.     For example, the only independent claims, claims 1 and 11, recite as follows: "said arcuate surfaces guiding said lure line into said drive pulley and allowing passage of said lure line through said opening and around said drive pulley" and "wherein said drive housing cover and drive housing base comprise a drive window having a height when said drive housing is in a closed configuration, allowing said lure to pass through said drive window when said lure line is passing around said drive pulley."

58.     Yet, the specification, as originally filed, did not include support for either claim limitation.

59.     Instead, the specification as originally filed stated:

When the motorized unit housing **40** is in a closed configuration, a window **48** allows the lure **16** (not shown) and lure line **18, 38** to freely enter and exit the motorized unit housing **40**…. When the motorized unit housing **40** is in a closed configuration, shown in FIG. 3, the height of the window **48**, indicated by dimension "B," is large enough to allow the lure **16** to pass through without binding at the motorized unit housing **40**.

'904 Patent para 31.

60.     There is nothing in this paragraph or anywhere else in the original specification describing arcuate surfaces or describing that the drive window had a height when said drive housing is in a closed configuration that allowed said lure to pass through said drive window when said lure line is passing around said drive pulley.

11

61.     Although Defendant submitted a Request for Continued Examination amending Paragraphs 31, 35, and 40 of the Specification and FIGS. 3, 6, 8, and 9 to redefine the invention and add new matter after filing, *see* **Exhibit 16**, an amendment introducing new matter after filing is not permitted.

62.     Thus, claims 1-20 violate the written description requirement.

63.     The specification also does not enable the claimed subject matter because the claim limitations recited above do not appear in the specification as originally filed.

64.     The claim limitations recited above are also indefinite because they are not sufficiently defined in the specification so as to inform, with reasonable certainty, those skilled in the art about the scope of the claimed invention.

65.     Plaintiff expressly reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery and the Court has construed the claims.

66.     The controversy between the parties is sufficient to entitle Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that the '904 Patent is invalid.

**THIRD CLAIM FOR RELIEF**
**UNENFORCEABILITY OF THE '904 PATENT**

67.     Plaintiff restates the foregoing paragraphs as if fully set forth herein.

68.     As stated above**,** Defendant has sold, disclosed, and otherwise made available to the public lure chasing systems claimed in the '904 Patent more than one (1) year before December 14, 2014, including in videos featuring inventor Meghan Wolfgram (which Defendant posted to YouTube) and offers for sale made on Defendant's website www.swiftpaws.com.

69.     Defendant, as assignee, and Meghan Wolfgram, as a principal of Defendant and an inventor, were under an obligation to disclose all relevant prior art to the United States Patent & Trademark Office.

70.     Yet despite posting numerous videos and otherwise selling and using the lure chasing systems claimed in the '904 Patent before December 14, 2014, neither Defendant nor inventor Meghan Wolfgram disclosed any of the pre-December 14, 2014 YouTube videos or other sales and uses to the United States Patent & Trademark.

71.     The failure to disclose this prior art was material and made with an intent to deceive the U.S. Patent & Trademark Office.

72.     In fact, the prior art that Defendant failed to disclose to the U.S. Patent & Trademark Office during the prosecution of the '904 Patent was substantially more material to patentability than the single prior art reference that Defendant disclosed (U.S. Patent No. 7,614,626), which describes a pulley system for shooting targets  that resembles two upright bicycle wheels.

73.     Moreover, via its October 19, 2019 Request for Continued Examination, Defendant through its prosecuting attorney asserted that seven features of the invention were distinguishable over the prior art.  Applicant stated:

> Applicants herein provide an overview of features of the claimed invention that are distinguishable over the cited prior art. Applicants do not admit or assert that these are the only points of novelty over the cited prior art, only that an understanding of these points of novelty will assist understanding Applicants' remarks and arguments in favor of allowance set forth in this response.
>
> Applicant's invention solves the problem of providing a pulley system for use with a lure line, which includes an attached lure, that allows for the following features as set forth in the amended claims. Applicant respectfully asserts that the cited prior art cannot be combined to provide this structure and features
>
> 1.     the pulley is partially enclosed by a cover and a base in order to protect the animal chasing the lure, and to protect the lure line as it passes around the pulley;
>
> 2.     the cover and based are hingedly connected, allowing the line to be looped around the pulley;

3. the lure line may enter the pulley on one side, and exit the pulley on the other side, over a broad range of angles which allows a very large number of potential course configurations;

4. a window 48 is provided at the hinged attachment point of the cover and base, so that the lure is not required to pass into the pulley as the lure line loops around the pulley as this would destroy the lure, yet the cover and based remain attached;

5. an opening 108 that is smaller than the window 48 is formed between the cover and base that allows the line to pass through the opening 108 and into and around the pulley, without requiring the lure to pass into the pulley itself (again, because this would destroy the lure);

6. the line does not pass through the window 48, only the opening 108; and

7. the opening 108 formed between arcuate surfaces on the cover and base, which lead the line, but not the lure, into the pulley. The pulley resides in upper and lower annular recesses with only a small gap between the pulley edges and the recess walls keeps the lure line from coming off the pulley, even if the lure line goes slack. This prevents entanglement of the line on the pulley shaft or underneath the pulley, and, importantly, allows the lure to pass through the window, and not the opening. By passing through the window and not the opening, the lure is not destroyed during operation of the invention. This is one of the problems solved by the specific structure of the invention, and why a simple looping pulley arrangement (such as Aanerud) is inferior to, and patentably distinct from, Applicant's invention.

Exhibit 16 at 12-13 of PDF (at 16-17 of document page number).

74. These statements were false, because Defendant's lure chasing systems that were sold, disclosed and otherwise made available to the public included these features.

75. Moreover, the statements were material and made with an intent to deceive the Patent Office, as Defendant referred to them as "points of novelty" to obtain allowance. *See id.* at 12 of PDF, at 16 per page number ("Applicants herein provide an overview of features of the claimed invention that are distinguishable over the cited prior art. Applicants do not admit or assert that these are the only points of novelty over the cited prior art, only that an understanding of these

14

points of novelty will assist understanding Applicants' remarks and arguments in favor of allowance set forth in this response.").

76.     Plaintiff expressly reserves the right to assert additional grounds of unenforceability after having the ability to conduct discovery and the Court has construed the claims.

77.     The controversy between the parties is sufficient to entitle Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that the '904 Patent is unenforceable.

**FOURTH CLAIM FOR RELIEF**
**INVALIDITY OF THE '801 PATENT**

78.     Plaintiff restates the foregoing paragraphs as if fully set forth herein.

79.     On April 12, 2022, the '801 Patent, titled "Lure Chasing System," was issued to Swift Paws, LLC, noting that Meghan Wolfgram and John Ritter were the inventors.

80.     The '801 Patent is assigned to Defendant.[1]

81.     The '801 Patent matured from U.S. Patent Application No. 16/841,596 ("the '596 Application"), filed April 6, 2020, and is a continuation-in-part of the '715 Application, which claims priority to the '058 Application.

82.     A true and correct copy of the '801 Patent is attached to this Complaint as **<u>Exhibit 17</u>** and is incorporated herein by reference.

83.     The effective filing date of claims 1-18 of the '801 Patent is April 6, 2020, or alternatively, December 14, 2014 (the filing date of the '715 Application"), or alternatively, December 17, 2013 (the filing date of the '058 Application).

---

[1] Swift Paws, LLC is now Swift Paws, Inc., the Defendant.

84. Claims 1-18 of the '801 Patent are invalid for anticipation under 35 U.S.C. § 102 because Plaintiff has sold, disclosed, or otherwise made available to the public lure chasing systems claimed in the '801 Patent more than one (1) year before the effective filing date of the claimed inventions.

85. Such prior sales and uses include those occurring in 2011, 2012, and 2013 described above, as well as those described in the 2019 YouTube videos listed on the face of the '801 Patent, including such as examples as the following: https://www.youtube.com/watch?v=JK7WlTVleYo, https://www.youtube.com/watch?v=8BtHJc9ihOg, and https://www.youtube.com/watch?v=J-sfhtHTQVY.

86. Claims 1-18 of the '801 Patent are invalid for obviousness under 35 U.S.C. § 103, in view of the prior art described in the Paragraph 82 alone, or in combination with each other, or U.S. Patent Publication 2015/0201586.

87. In addition, claims 1-18 of the '801 Patent are invalid for obviousness under 35 U.S.C. § 103, in view of the prior art references mentioned in Paragraphs 82 above, alone or in combination with each other.

88. Further, claims 1-18 of the '801 Patent are invalid for failure meet the written description, enablement, and definiteness requirements of 35 U.S.C. § 112.

89. For example, the phrase "defined annular space forming a lure passthrough window that includes a substantially solid inner surface", which appears in independent claims 1 and 10, is indefinite because it is not sufficiently defined in the specification so as to inform, with reasonable certainty, those skilled in the art about the scope of the claimed invention.

90. Plaintiff expressly reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery and the Court has construed the claims.

91. The controversy between the parties is sufficient to entitle Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that the '801 Patent is invalid.

## FIFTH CLAIM FOR RELIEF
## UNENFORCEABILITY OF THE '801 PATENT

92. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

93. As stated in above, Defendant has sold, disclosed and otherwise made available to the public lure chasing systems claimed in the '801 Patent more than one (1) year before December 14, 2014, including in videos featuring inventor Meghan Wolfgram (which Defendant posted to YouTube) and offers for sale made on Defendant's website www.swiftpaws.com.

94. During the prosecution of the '801 Patent, Defendant asserted that certain YouTube videos were not available prior to the filing date of the '715 Application, December 14, 2014. *See* **Exhibit 18**, August 9, 2021 Amendment (Defendant representing: "Applicant respectfully remarks that the 'Introduction to SwiftPaws for Home Use,' YouTube video, carrying an apparent publishing date of February 4, 2019, was not publicly available prior to the filing date of the parent application which was December 14, 2014."). (*Id.* at 14 of PDF, at 13 of document page number.)

95. However, Defendant failed to disclose to the United States Patent & Trademark Office any of videos and other disclosures of the Swift Paws product that occurred more than one year prior to December 14, 2014.

96. Defendant, as assignee, and Meghan Wolfgram, as a principal of Defendant and an inventor, were under an obligation to disclose all relevant prior art to the United States Patent & Trademark Office.

97. Yet despite posting numerous videos and otherwise selling and using the lure chasing systems claimed in the '801 Patent more than one year before December 14, 2014, neither

Defendant nor inventor Meghan Wolfgram disclosed any of the pre-December 14, 2013 YouTube videos and other sales and uses to the United States Patent & Trademark Office.

98. Defendant's failure to disclose the pre-December 14, 2013 videos and other prior uses of the Swift Paws product was intentional, material, and made with an intent to deceive the United States Patent & Trademark Office.

99. The controversy between the parties is sufficient to entitle Plaintiff to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that the '801 Patent is unenforceable.

<u>**SIXTH CLAIM FOR RELIEF**</u>
<u>**TORTIOUS INTERFERENE WITH BUSINESS RELATIONSHIIPS**</u>

100. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

101. Defendant engaged in tortious interference with Plaintiff's existing relationship with Amazon and Amazon customers by filing the Amazon Complaint, knowing that Plaintiff was selling the Fast Fetch Toy on Amazon and with the specific intent to have Amazon cease allowing Plaintiff to sell the Fast Fetch Toy on Amazon, which is exactly what happened.

102. Defendant, knowing of the relationship between Plaintiff and Amazon, acted with intent to cause a breach or termination of Plaintiff and Amazon's business relationship.

103. Defendant acted with bad faith, improper motive, or improper means, because it had no reasonable basis for asserting that the Fast Fetch Dog Toy infringed a valid and enforceable claim of the '801 and '904 Patents.

104. Plaintiff has suffered damages, including lost sales after the Fast Fetch Toy was de-listed on Amazon, storage fees, and other expenses related to the fact that Plaintiff cannot sell the product on Amazon and a reduction of its account health on Amazon.

## SEVENTH CLAIM FOR RELIEF
## UNFAIR TRADE PRACTICES

105. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

106. Acting in bad faith, Defendant asserted ownership over patents it knew to be invalid, unenforceable, and not infringed by the Fast Fetch Toy, thus engaging in unfair and/or deceptive trade practices within the meaning of Tenn. Code Ann. § 47-18-104.

107. As a direct result of Defendant's unfair and/or deceptive trade practices, Plaintiff has suffered an ascertainable loss of money or property.

108. Because Defendant's conduct was willful and knowing, Plaintiff is entitled to treble damages.

## EIGHTH CLAIM FOR RELIEF
## UNFAIR COMPETITION

109. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

110. Defendant's bad faith and tortious conduct described above deprived Plaintiff of customers, profits, and other economic prospects.

111. As a direct result of Defendant's unfair competition, Plaintiff has suffered significant monetary damages, including without limitation lost sales and storage fees and other expenses.

## PRAYER FOR RELIEF

WHERFORE, Phoenix Worldwide prays for judgment and an order in its favor against Defendant that provides as follows:

A. Declares each claim of the '904 and '801 Patents invalid;

B. Declares the '904 and '801 Patents unenforceable;

C. Declares the manufacture, use, sale, offer of sale, or importation of Plaintiff's products do not infringe any valid claim of the '904 and '801 Patents;

D. Enjoins Defendant from enforcing the '904 and '801 Patents;

E. Declares that Plaintiff is permitted to sell the Fast Fetch Dog Toy notwithstanding Defendant's claims in the Amazon Complaint;

F. Finds that this is an exceptional case under 35 U.S.C. § 285;

G. Awards Plaintiff its damages in the form of lost sales and storage fees and other expenses;

H. Awards Plaintiff treble damages;

I. Awards Plaintiff its attorneys' fees, costs, and expenses incurred in connection with this action to Plaintiff;

J. Awards Plaintiff the damages Plaintiff has sustained as a result of Defendant's tortious interference with Plaintiff's business relationships, unfair and/or deceptive trade practices, and unfair competition; and

K. Awards such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Phoenix Worldwide hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Wright, Cortesi & Gilbreath

*/s/ Stephan R. Wright*
Stephan R. Wright (#031494)
Shane V. Cortesi (#029785)
2030 Hamilton Place Blvd., Suite 240
Chattanooga, TN 37421
Telephone: (423) 826-6919
Facsimile: (423) 826-6929
swright@wcglegal.com
scortesi@wcglegal.com
*Counsel for Phoenix Worldwide, LLC*


## CERTIFICATE OF SERVICE

I do hereby certify that <u>Complaint</u> was filed electronically on July 11, 2024, through the

Court's electronic filing system. Service of the Complaint via Summons was sent to be served on

the Defendant via service of its registered agent at the following address:

SWIFT PAWS, INC.
Meghan Wolfgram
(Registered Agent)
2955 Lett LN
Malabar, FL 32950

BY: _____ */s/Stephan R. Wright*_____
Stephan R. Wright, Esq.

21